UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MIRIAM PEREZ                          :
                                      :
           v.                         :        C.A. No. 05-462A
                                      :
JO ANNE B. BARNHART,                  :
Commissioner of the Social Security   :
Administration                        :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on November 8, 2005 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings. On November 14, 2006, Plaintiff filed a Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings. (Document No. 11). On December 5, 2006, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and that

Plaintiff's Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings (Document No. 11) be DENIED.

## I.       PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on November 19, 2003.  (Tr. 1, 3, 52-54, 201-203).  The applications were denied initially and on reconsideration.  (Tr. 21-25, 27-31, 205-209, 211-216).  On April 21, 2004, Plaintiff filed a request for an administrative hearing.  (Tr. 32).  On March 14, 2005, a hearing was held before Administrative Law Judge V. Paul McGinn (the "ALJ"), at which Plaintiff, represented by counsel and assisted by an interpreter, a vocational expert and a medical expert appeared and testified.  On June 27, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 10-18).  On July 20, 2005, Plaintiff appealed to the Appeals Council by filing a request for review and appeal letter.  (Tr. 9, 219).  The Appeals Council denied Plaintiff's request for review on September 9, 2005.  (Tr. 5-8).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly weigh the opinion of the treating physician in accordance with the Commissioner's regulations and Social Security Ruling 96-2p.  Plaintiff also argues that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence in the record.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record that supports the ALJ's conclusions.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district

court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four

remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart,

274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the

case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726,

729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals

Council).  After a sentence four remand, the court enters a final and appealable judgment

immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good
> cause for the failure to incorporate such evidence into the record in
> a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is

new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,

1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the

Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at

1095.  With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human

Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them

such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was fifty-five years old at the time of the ALJ hearing.  (Tr. 223).  Plaintiff has a sixth-grade education which she obtained in Guatemala, and she communicates only in Spanish. (Tr. 86, 92).  Plaintiff does not read, write or understand English.  (Tr. 224).  Plaintiff alleges disability due to blurry vision, shoulder and leg  pain, depression, and sleeping and concentration difficulties.  (Tr. 78, 86, 97, 227-233).

Plaintiff's past work had been in a variety of jobs mainly in the jewelry industry.  (Tr. 114-116, 224-228). The VE testified that Plaintiff's jewelry work was unskilled, sedentary-level work.  (Tr. 239).

Before Plaintiff alleges she became disabled on August 1, 2002, she was treated by Dr. Claude Younes, an internist, and at the Center for Orthopedics.  (Tr. 124-138).  Her complaints included blurred vision, right knee pain and left shoulder pain.  (Tr. 126, 128, 130-132).  Right knee residual prepatellar bursitis and left shoulder calcific tendonitis were diagnosed.  (Tr. 124-125).  A left shoulder steroid injection in April 2002 resulted in about 50% improvement with decreased

impingement and improved range of motion with less pain.  (Tr. 124).  Testing during this period showed that Plaintiff had a slightly increased glucose level with readings between 113 and 151 compared to a normal range of 70 to 110.  (Tr. 128, 131-132).

In July 2002, an external eye examination and ophthalmoscopic examination of Plaintiff's eyes by Dr. Barney Burchfield was "WNL" or within normal limits, and Plaintiff's best corrected vision was 20/20 in each eye despite a diagnosis of primary open angle glaucoma.  (Tr. 161).  Dr. Burchfield reported that Plaintiff's prognosis was, with treatment, good.  (Tr. 162).

On August 7, 2002, Plaintiff was seen by Dr. Younes for complaints of "slightly blurred" vision, and his progress note does not reflect any other complaints at that time.  (Tr. 128).  The record does not indicate any treatment for over one year until September 2, 2003, when Plaintiff initially saw Dr. America Foster.  (Tr. 145).  At that time, Plaintiff's glucose level was greatly elevated at 369, and her gycosylated hemoglobin ("HGB $A_1C$ ") was very high at 14.5 compared to a normal range of 4.0 to 6.0.  (Tr. 150, 153).  Dr. Foster prescribed 500 mgs. of glucophage, another antihyperglycemic medication, in addition to the Avandia she had been taking.  (Tr. 145).

In October 2003, Plaintiff complained of frequent bouts of blurred vision, and use of insulin was discussed for treatment of Plaintiff's diabetes, but she was reluctant to start on it.  (Tr. 143).  In November 2003, Plaintiff's glucose was 138, and her HGB $A_1C$ had decreased to 9.6 which was described as "much better."  (Tr. 147).  On November 25, 2003, Plaintiff reported that her blood sugar was more controlled, and her blood sugar level was 89.  (Tr. 141).  In December 2003, her blood sugar level was 106, but Plaintiff complained of blurred vision "at times."  (Tr. 140).  She also had difficulty with range of motion in her left shoulder, complained of left shoulder pain, and was prescribed Tylenol 3.  Id.

-12-

In January 2004, Dr. Virginia Byrnes reviewed Plaintiff's medical records and opined that her medical conditions were not severe. (Tr. 23-25, 188-190). In March 2004, Dr. Jones reviewed Plaintiff's medical records and prepared an assessment of her physical RFC. (Tr. 29-31, 179-186). Dr. Jones concluded that Plaintiff had the capability of lifting and carrying twenty-five pounds frequently and fifty pounds occasionally and that she could stand and/or walk for about six hours in an eight-hour day (with normal breaks) and could sit for a similar length of time. (Tr. 180).

In April 2004, Maria Garrido, Psy.D, a clinical psychologist, examined Plaintiff at the request of her attorney (Tr. 168-172) and prepared a questionnaire concerning her opinion of Plaintiff's functional capacity to perform various mental work-related functions. (Tr. 173-174). Dr. Garrido reported that Plaintiff was alert and oriented in all spheres with no apparent signs of confusion, disorientation or other difficulties of consciousness and that Plaintiff's memory, concentration and abstraction were only mildly impaired. (Tr. 170). WAIS-III IQ testing showed a performance IQ of 67, but test of nonverbal intelligence ("TONI-III") testing which Dr. Garrido indicated seeks to minimize the impact of cultural bias on the testing resulted in a standard score of 81 which is in the low average range. (Tr. 171). Dr. Garrido estimated that Plaintiff's cognitive functioning was in the borderline range. (Tr. 172). Dr. Garrido diagnosed a recurrent depressive disorder, an anxiety disorder, and rated Plaintiff's current global assessment of functioning ("GAF") at 55[1]. Id.

Dr. Garrido indicated that Plaintiff's depression was associated with memories of her past, particularly her separation from her husband, but she had separated from him six years earlier and

---

[1] A GAF rating of between 51 and 60 is indicative of an individual who has moderate psychological symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). The higher the rating with the range, the less severe are the symptoms.

continued to engage in substantial gainful activity for several years thereafter and did not report that depression played any part in her stopping working.  (Tr. 168, 169, 172).  Dr. Garrido opined that Plaintiff's condition moderately severely impacted her ability to perform varied or complex tasks and to respond to customary work pressures but that her ability to perform most tasks including understanding, remembering and carrying out instructions, maintaining attention and concentration, responding appropriately to co-workers and supervisors, and performing simple or repetitive tasks were only moderately impaired.  (Tr. 173-174).  Nonetheless, Dr. Garrido opined that Plaintiff would not be able to function effectively in competitive employment.  (Tr. 172).

In May 2004, Dr. Foster prepared a medical questionnaire and a pain questionnaire regarding Plaintiff and her impairments.  (Tr. 175-177).  Dr. Foster opined that Plaintiff suffered from moderate left shoulder pain.  (Tr. 175, 177).  She opined that Plaintiff could not sustain competitive employment on a full-time, ongoing basis.  (Tr. 176, 177).  Dr. Foster opined that Plaintiff could never lift or carry more than five pounds and that she could only lift or carry that weight occasionally.  (Tr. 178).  She also indicated that Plaintiff would have lie down after sitting and/or standing in combination for two hours, and that she could sit for a total of only four hours, stand for a total of four hours, or walk for a total of four hours in an eight-hour day.  Id.  She also opined that Plaintiff could not use her left hand for simple grasping and could not use either arm or hand for reaching, pushing and pulling or fine manipulations although the medical record does not show any problem with Plaintiff's right shoulder, arm or hand.  Id.

In February 2005, Dr. Foster completed another medical questionnaire and pain questionnaire.  (Tr. 196-198).  Dr. Foster again opined that although Plaintiff's left shoulder pain was only moderate, it significantly limited her ability to do basic work activities such as walking,

standing, sitting, lifting, carrying and handling.  (Tr. 196).  She opined that Plaintiff could not

sustain competitive employment on a full-time, ongoing basis (Tr. 197) and that moderate pain

would preclude sustained concentration and productivity needed for full-time employment.  (Tr.

198).

Plaintiff reported living with her son, daughter-in-law and two grandchildren. (Tr. 106).  She

prepared her own meals and did simple things around the house when she was not too tired.  (Tr.

107, 228).  Plaintiff testified that she could not work because her eyes got tired.  (Tr. 227).  She

reported that her left shoulder hurts all the time and that, as a result, she cannot lift "heavy things."

(Tr. 229).  She testified that becoming tired does not cause her to lie down a lot but that she

sometimes lies down for about an hour around 5:00 p.m.  (Tr. 231).

At Plaintiff's hearing in March 2005, Dr. Kaplan testified as a medical expert.  (Tr. 233-238).

Dr. Kaplan testified that there were no medical records from Dr. Foster after 2003 other than the

questionnaires she completed.  (Tr. 236).  Dr. Kaplan testified that there was a history of open angle

glaucoma and that Plaintiff had good visual acuity with a need for serious refraction glasses.  (Tr.

237).  He also testified that Plaintiff complained of blurred vision at times which he opined could

be due to fluctuating sugar levels.  Dr. Kaplan testified that in April 2002 Plaintiff was seen for

bursitis in her right knee and that an x-ray showed evidence of calcium in one of the tendons in her

left shoulder.  Id.

Dr. Kaplan testified that fluctuations in blood sugar levels in the range experienced by

Plaintiff should not have caused fatigue which usually results from hypoglycemia, blood sugar levels

below 70.  (Tr. 238).  He opined that adaption to her diabetes could cause stress that could make her

feel tired.  Id.

A vocational expert, Mr. Murgo, also testified at Plaintiff's hearing in March 2005.  (Tr. 238-240).  He testified that Plaintiff's past jewelry work had been unskilled sedentary work.  (Tr. 239).  He opined that the functional limitations indicated by Dr. Garrido were not compatible with the ability to perform unskilled work and that if Plaintiff needed to leave work to take a juice break for ten to fifteen minutes every two hours, this would not be consistent with work.  (Tr. 239-240).

## A.    The ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician

The ALJ decided this case against Plaintiff at Step 4.  The ALJ found that Plaintiff's diabetes mellitus and chronic shoulder pain were "severe" (20 C.F.R. §§ 404.1520(c) and 416.920(c)) but did not prevent her from performing her past relevant work (unskilled/sedentary) as a jewelry worker.  (Tr. 17-18, Finding 3 and 8).  Plaintiff's RFC permits her to lift and carry up to twenty-five pounds on a regular basis and to sit, stand or walk for six hours in an eight-hour workday.

Plaintiff came to the United States in 1988 and worked primarily in the jewelry industry until 2000.  (Tr. 69-72, 169).  In 2000, Plaintiff began working at a T-shirt printing business until she stopped working altogether in August 2002.  The record contains conflicting statements by Plaintiff as to why she left her last job.  In her November 26, 2003 disability application, Plaintiff indicated that she stopped working because "at the time the sugar was very high and with the death of a family member it did not help."  (Tr. 86).  During her psychological evaluation on April 28, 2004, Plaintiff stated that she faced "difficult work conditions" at her last job "due to exposure to chemicals and to the lack of ventilation" and left due to left shoulder pain and other symptoms related to her diabetes.  (Tr. 169).  At the ALJ hearing, Plaintiff testified that she had to work standing up in her last job and could not do it because of leg pain.  (Tr. 228).  The "moving target" nature of Plaintiff's

reasons for discontinuing work are troubling to this Court and likely contributed to the adverse credibility determination made by the ALJ.  (Tr. 16, 17 at Finding 5).[2]

Plaintiff argues that the ALJ erred by not providing sufficient reasons for rejecting the disability opinion of Dr. Foster, a treating physician.  As a treating physician, Dr. Foster's medical opinion must be evaluated using the "treating physician rule," 20 C.F.R. § 404.1527(d).  Generally, more weight is given to treating sources and controlling weight is given if the opinion is medically supported and not inconsistent with other substantial evidence of record.   20 C.F.R. § 404.1527(d)(2).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  Id.  These factors include nature and length of treating relationship, frequency of examination, supportability, consistency and specialization.  Id.

In this case, the ALJ briefly discussed Dr. Foster's opinion of total disability and declined to give it "great weight."  (Tr. 16).  He reasoned that Dr. Foster "failed to provide detailed examination notes that would support [her] conclusion."  Id.  Dr. Foster offered her opinion that Plaintiff was totally disabled on May 28, 2004 (Ex. 6F) and again on February 28, 2005.  (Ex. 10F). In May 2004, Dr. Foster states that she treated Plaintiff only in "9/03." (Tr. 175).  In February 2005, she indicates treatment from "12-30-3 – present."  (Tr. 196).  However, there are only very limited treatment records in the file from Dr. Foster.  It appears that Dr. Foster first saw Plaintiff on September 2, 2003 (Tr. 145) and on four other occasions ending on December 30, 2003.  (Tr. 140-

---

[2] Plaintiff was seen by Dr. Younes on August 7, 2002 for a follow-up visit shortly before she stopped working. Other than "slightly blurred" vision, there is no mention of shoulder or leg pain.  (Tr. 128).  Plaintiff's blood sugar was noted slightly high at 122, and a blood test noted her diabetes as in the "intermediate controlled" range.  (Tr. 128, 133). Thus, the medical records do not support the various medical reasons given by Plaintiff for stopping work.

144).  There are no records of any treatment by Dr. Foster before or after this four-month period in 2003.

The ALJ correctly points out that Dr. Foster failed to provide "detailed examination notes" that support her total disability opinion.  Thus, it is hard to criticize the ALJ for his conclusory rejection of Dr. Foster's conclusory opinions.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).  Dr. Foster's treatment notes simply do not support her total disability opinion and conflict with other medical evidence of record.  20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  The other "treating physician" factors also support the ALJ's decision.  Dr. Foster is not a specialist; she only saw Plaintiff a handful of times in the Fall of 2003, and her opinion lacked consistency with other medical evidence of record.  Finally, Plaintiff's reliance on Lord v. Apfel, 114 F. Supp. 2d 3 (D.N.H. 2000), is misplaced as that case is distinguishable.  In Lord, the ALJ erred by failing to consider and mention a category of evidence which included a report from the claimant's treating physician.  Here, the ALJ considered Dr. Foster's report and exercised his discretion to give it reduced weight.  Further, the Court in Lord recognized that "the ultimate disability determination is reserved to the Commissioner and that a treating physician's opinion on the issue of disability is therefore not entitled to controlling weight or special significance."  114 F. Supp. 2d at 15 (citing 20 C.F.R. § 404.1527(e)(1)).

The ALJ properly evaluated Dr. Foster's opinion and records and did not err in refusing to adopt her total disability opinion.  Rather, the ALJ exercised his discretion to place more weight on the reports of Dr. Jones (Ex. 7F) and Dr. Byrnes.  (Ex. 8F).  See Rivera-Torres v. Sec'y of Health

and Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).

### B.     The ALJ's RFC Assessment is Supported by Substantial Evidence

The ALJ determined that Plaintiff's RFC allows her to regularly lift and carry up to twenty-five pounds and occasionally fifty pounds, and to sit, stand or walk for six hours in an eight-hour workday. (Tr. 17, Finding 6). As noted above, this RFC assessment is supported by the reports of Dr. Jones and Dr. Byrnes and by the ALJ's adverse credibility determination as to Plaintiff's claims of disability. Thus, it is entitled to deference.

Plaintiff's primary argument is that the ALJ erred by rejecting the opinion of Dr. Garrido. Dr. Garrido is not a treating psychologist. She evaluated Plaintiff, at the request of Plaintiff's counsel, after Plaintiff's disability application was denied initially and on reconsideration. (Tr. 168). The ALJ did not err in concluding that Dr. Garrido's opinion was entitled to little probative weight "because of poor supportability." (Tr. 16). Before her attorney sent her to Dr. Garrido in April 2004 for a psychological evaluation, there is no record that Plaintiff complained of depression or memory problems, and she had never been hospitalized for any psychological condition. When Plaintiff was initially seen by Dr. Foster in September 2003, it was indicated that she was not having problems with memory loss or depression. (Tr. 145). When her eyes were examined in February 2004, Plaintiff was reported as being oriented in three (3) spheres with appropriate mood and affect. (Tr. 193). Prior to Plaintiff's examination by Dr. Garrido, there is no record of any physician diagnosing depression or treating her for any psychological impairment. At no time, either before or after Dr. Garrido's examination, is there any record of an antidepressant or other psychotropic medication

prescribed for Plaintiff.  (Tr. 169, 199).  Thus, there is substantial evidence in the record supporting the ALJ's conclusion of "poor supportability."

During her evaluation by Dr. Garrido, Plaintiff was oriented in all spheres with no apparent signs of confusion, disorientation or other difficulties of consciousness.  (Tr. 170).  Dr. Garrido opined that Plaintiff had only mild impairment in memory, concentration and abstraction.  Id.  Dr. Garrido administered the TONI-III test which she indicated seeks to minimize the impact of cultural bias on the testing, and Plaintiff obtained a standard score of 81 which is in the low average range of intellectual functioning.  (Tr. 171).  Dr. Garrido estimated that Plaintiff's cognitive functioning was in the borderline range.  (Tr. 172).

Dr. Garrido indicated that Plaintiff reported having had episodes of depression that were associated with memories of her past, particularly her separation from her husband, however, Plaintiff had separated from him six years earlier and continued to engage in substantial gainful activity for several years thereafter and, among the several reasons given, did not report that depression played any part in her stopping working.  (Tr. 168, 169, 172).  She rated Plaintiff's GAF at 55 which is indicative of only moderate difficulty.  (Tr. 172).  Dr. Garrido did not report observing any active signs or symptoms of depression at the time of her evaluation.

Based upon the above facts, the ALJ properly found that the medical evidence did not support the existence of a medically determinable severe mental impairment and that Dr. Garrido's opinion as to moderate and moderately severe limitations as the result of a recurrent depressive episode and an anxiety disorder was entitled to little probative weight.  Further, the ALJ's RFC assessment is supported by substantial evidence of record and thus is entitled to deference.

-20-

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and that Plaintiff's Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings (Document No. 11) be DENIED.  Final judgment shall enter in favor of the Commissioner.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 3, 2007